**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH T. MORRISON, Trustee of the DONALD T. MORRISON TRUST DTD 5/25/00, an Illinois Inter Vivos Trust, DONALD T. MORRISON, and DANIELLE D. MORRISON, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:10-cv-7894 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| POTECTIVE LIFE INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs allege that the policy insuring the life of Donald T. Morrison ("Morrison") issued by Defendant's predecessor-in-interest violates the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* ("ICFA"). Before the Court are the parties' cross-motions for summary judgment. Because the statute of limitations expired on Plaintiffs' ICFA claims long before Plaintiffs brought this lawsuit, Defendant's motion for summary judgment [54] is granted and Plaintiffs' motion for summary judgment [58] is denied.

**I.    Background**

Morrison, a retired lawyer, has obtained several life insurance policies for himself, helped his wife apply for hers, and counseled her about dropping her policy when it became more expensive than it was worth. He is familiar with a range of life insurance products and the differences among them. For instance, Morrison understands that permanent life insurance is

different from term life insurance because, in addition to term insurance being bounded in time, permanent life insurance accumulates cash value. Morrison also understands that term life insurance typically requires an annual premium and a policy that does not require one—where, say, the entire premium is paid at the outset—will be very expensive. In other words, whether through his professional or personal experiences, Morrison knows more than a little about life insurance.

In 2000, when Morrison was 71, he applied for $300,000 "EG-10" policy with Empire General. The first page of that policy states:

**TERM LIFE INSURANCE POLICY**
Term to Age 96 Coverage Period
Premiums Increase After Initial Premium Period
Death Benefit Payable If The Insured Dies Before The Expiry Date
Premiums Payable During Lifetime of Insured Until Expiry Date
NON-DIVIDEND PAYING

This Policy Is A Legal Contract Between The Owner And The Company

READ THIS POLICY CAREFULLY

The third page gets into details, including that the benefit amount is $300,000, the initial payment period is ten years, and the annual premium is "$12,069.00*." The asterisk next to that number refers the reader to the next line: "*SEE PAGE 3A FOR SUBSEQUENT PREMIUMS." Page 3A has a table titled "**POLICY SCHEDULE (CONTINUED)**," with the subtitle **"SCHEDULE OF GUARANTEED ANNUAL PREMIUMS."** The table sets out the year of the policy, the age Morrison will be during that year, and, under the heading "LIFE INSURANCE," a dollar amount. The table also has a column for "WAIVER OF PREMIUM," but it is unmarked. For years one through ten (ages 72 to 82), the amount listed under the LIFE

INSURANCE heading is $12,069.  In year eleven, the amount jumps to $324,597. The amount increases in each subsequent year, reaching $561,075 in year twenty-four.

The parties disagree about why Morrison's annual premium for the first ten years was set at $12,069.  The basic annual premium for an EG-10 policy with a face amount of $300,000 for a "non-rated" (that is, healthy) 72-year-old nonsmoker is $6,072.  Morrison believes that he paid a higher rate (nearly double) so he could stop paying premiums after ten years while keeping his coverage for another fourteen, until age 96.  The Defendant denies that, and maintains that Morrison was indeed "rated" due to his health and that $12,069 was the correct substandard rate for an EG-10 policy.

Morrison signed the policy application on March 16, 2000.  In the application, he named his wife as the proposed owner and beneficiary.  That same day, Morrison also signed Empire General's "Notice Regarding the Application for Life Insurance Without a Corresponding Basic Illustration."  On June 7, 2000, Empire General issued Morrison the policy.  One week later, Morrison executed an amendment to his application changing the owner and beneficiary of his policy to the Donald T. Morrison Trust, and naming his son, Joseph Morrison, as trustee.  The amendment lists the amount of insurance as $300,000, the plan as "TERM TO 96 – 10 YEAR," and "Premium Payable $12069.00 ANNUALLY."  The amendment states that "[i]t is agreed by the undersigned that the changes shown above shall be an amendment to and form a part of the application and policy."

Morrison read the policy when it was issued in 2000 and acknowledges that he was confused by its terms.  The **"SCHEDULE OF GUARANTEED ANNUAL PREMIUMS"** had to be, as he put it, "a mistake of some kind, some kind of insurance gobbledygook that I don't

3

understand." Morrison admits, however, that he never asked anyone at Empire General for clarification. Joseph Morrison also read the policy in 2000 or 2001. He also was confused. He testified that "it made absolutely no sense" and "it was inconsistent with [his] understanding of the policy and it was inconsistent with the amendment and it was inconsistent with what he read on the first page." Even so, Joseph Morrison never asked anyone at Empire General for clarification.

Each year for ten years Morrison made annual premium payments of $12,069. On June 7, 2009, Protective Life Insurance Company (the successor-in-interest to Empire General and Defendant in this case) sent a letter to the Morrison Trust explaining that the policy premium was guaranteed to remain the same for the first ten years of the policy, through June 6, 2010, but would increase after that. The premium for year eleven would be $297,000. That payment was not made, and the policy was terminated on June 7, 2010.

In September, 2010, Morrison filed a complaint with the Illinois Department of Insurance ("DOI") asserting that his policy was issued with assurance that "premiums would no longer be required" after payment of ten premiums of $12,069. The DOI responded that his "policy was issued with level premiums of 12,069.00 payable during the initial 10 year premium paying period. Premiums increase in the 11th policy year and are payable during the lifetime of the insured until age 96." The DOI declined to take further action because "it appears the company has followed the requirements of the contract."

On November 23, 2009, Plaintiffs filed a complaint in state court. Defendants removed the case to federal court, invoking this Court's diversity jurisdiction. Plaintiffs allege that

4

Defendants violated ICFA by drafting and marketing the Morrison policy in "a confusing and misleading manner." The parties have filed cross-motions for summary judgment.

## II.     Summary Judgment Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). On cross-motions for summary judgment, the Court construes all facts and inferences "in favor of the party against whom the motion under consideration is made." *In re United Air Lines, Inc.,* 453 F.3d 463, 468 (7th Cir. 2006) (quoting *Kort v. Diversified Collection Servs., Inc.,* 394 F.3d 530, 536 (7th Cir. 2005)); see also *Gross v. PPG Industries, Inc.*, 636 F.3d 884, 888 (7th Cir. 2011); *Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the

opposing] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

**III.    Discussion**

Plaintiffs' argue that Morrison reasonably believed he bought a policy with a "vanishing premium"—where after paying premiums for ten years at a higher than normal rate he would owe nothing for the last fourteen years of coverage, *see Asad v. Hartford Life Ins., Co.*, 116 F. Supp. 2d 960, 962 (N.D. Ill. 2000)—but that he did not get what he wanted because the policy documents were misleadingly drafted to conceal a "level term" policy with premiums that became impossibly high after the tenth year, see *Pekin Life Ins. Co. v. Kopitzke*, 832 F. Supp. 2d 976, 978 (S.D. Ind. 2011).

Based on that alleged wrong, the Plaintiffs assert claims under ICFA, "a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). The elements of a claim under ICFA are: (1) a deceptive act or unfair practice by the defendant, (2) the defendant's intent that the plaintiff rely on that act or practice, and (3) that the act or practice occurred in the course of trade or commerce. *Id.*; *see also Reeder v. HSBC USA, Inc.*, 2009 WL 4788488, *11 (N.D. Ill. Dec. 8, 2009) (citing cases). A claim for damages under ICFA requires proof of actual damages proximately caused by the defendant. See 815 ILCS 505/10a(a); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514-15 (7th Cir. 2006). The statute of limitations for ICFA claims is three years. 815 ILCS 505/10(a)e.

Plaintiffs contend that their ICFA claim is timely because they did not suffer any actual damage until their policy was terminated; as Plaintiffs see it, if Donald Morrison had died anytime during the first ten years of the policy's existence, the full death benefit would have been paid. But that argument is contrary to the case law addressing claims involving an allegedly misleading or unfair insurance policy, pursuant to which claims like that asserted by Plaintiffs here accrue when the policy is purchased and issued. *Asad v. Hartford Life Ins. Co.*, 116 F. Supp. 2d 960, 963 (N.D. Ill. 2000); see also *Maroldo v. Life Ins. Co. of the Southwest*, 2012 WL 1094462, at *3 (N.D. Cal. March 30, 2012) (agreeing with *Asad* that a "vanishing premium" fraud claim based on confusing and misleading marketing concerns "representations made at the time of the sale of the policy which induced purchase of the policy"). At that point, "a person knows or reasonably should know of his injury and also should know that it was wrongfully caused." *Knox College v. Celotex Corp.*, 430 N.E.2d 976, 979 (Ill. 1982); *Tammerello v. Amerquest Mortg. Co.*, 2006 WL 2860936, *7 (N.D. Ill. Sept. 29, 2006). Thus the accrual rule for ICFA claims about a misleading or unfair insurance policy is no different from the usual accrual rule for fraud claims: the limitations period begins to run when the fraud was discovered or could have been discovered through due diligence. *Asad*, 116 F. Supp. 2d at 963.

In this case, Morrison read his policy when it was issued in 2000. He was confused about its express terms and thought there was a mistake in regard to the premium schedule. Joseph Morrison had a similar experience, although perhaps not until 2001. For both, the policy that they read in 2000 or 2001 did not reflect their understanding of the policy that Morrison thought he bought. Plaintiffs sued in 2009 to seek a remedy for Morrison's purchase of a policy that they believe was wrongfully presented as something it was not. In the words of the complaint, "[b]ut

7

for the confusing and misleading marketing and/or the confusing and misleading language in the Subject Policy, the plaintiff would not have paid any premiums and would have obtained other insurance." But that misleading policy language is precisely the harm that Plaintiffs detected (or should have, by inquiring) eight or nine years earlier, in 2000 or 2001. Therefore, at the very latest, Plaintiffs' ICFA claims accrued in 2001. Under ICFA's three-year statute of limitations, Plaintiffs brought their claims at least five years too late.[1]

## IV. Conclusion

Because the statute of limitations has run on Plaintiffs' ICFA claims, Defendant's motion for summary judgment [54] is granted and Plaintiffs' motion for summary judgment [58] is denied.

Dated: September 21, 2012          _____
                                                      Robert M. Dow, Jr.
                                                      United States District Judge

---

[1] Plaintiffs' complaint and notice of removal suggest that, in addition to their ICFA claims, they have an independent claim for damages under the Uniform Deceptive Trade Practices Act ("Uniform Act"), 815 ILCS 510/1 *et seq.* But Plaintiffs' response to Defendant's motion for summary judgment explains that they only seek "damages under the Consumer Fraud and Deceptive Business Practices Act [ICFA] based upon a violation of the Uniform [Act]." That is, the Uniform Act supplies a definition, not the basis for an independent claim. In any event, they could not assert an independent claim for damages under the Uniform Act, which allows only injunctive relief, not damages. See, *e.g.*, *Smith v. Prime Cable of Chicago*, 658 N.E.2d 1325, 1337 (Ill. App. Ct. 1st Dist. 1995).